```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                :
LEONARDO MEDINA,               :
                :
              Plaintiff,     :
                :         14-CV-6034 (VSB)
      - against -        :
                :         **OPINION & ORDER**
MICHAEL SEILING,             :
                :
              Defendant.  :
                :
------------------------------------------------------X

Appearances:

Leonardo Medina
Coxsackie, New York
*Plaintiff Pro Se*

Richard Bahrenburg
New York City Law Department
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Leonardo Medina ("Plaintiff") brings this action pro se against Defendant Michael Seiling ("Defendant") alleging claims under 42 U.S.C. § 1983 that his probation was revoked based on arrest for and prosecution of attempted robbery charges against him that were ultimately dismissed. Because I find that Plaintiff's false arrest claim is time-barred, but his malicious prosecution claim is subject to equitable tolling such that I consider it timely filed, Defendant's motion for judgment on the pleadings, (Doc. 35), is GRANTED IN PART and DENIED IN PART. Furthermore, because I find that § 306-b of the New York Civil Practice Law and Rules ("CPLR") does not apply to cases before federal courts and because Defendant did not move to dismiss under that provision, Plaintiff's motion for an extension of time for

service of process is DENIED.

I. **Background**[1]

At approximately 11:00 a.m. on October 7, 2010, New York City Police Department officers took Plaintiff to the 34th precinct, where Defendant told Plaintiff that he was a suspect in an attempted robbery.[2] (Sec. Am. Compl. 2.)[3] After Defendant read Plaintiff his Miranda rights, Plaintiff refused to answer questions without the presence of a lawyer, Defendant arrested Plaintiff, and Plaintiff was arraigned for attempted robbery in the second degree. (*Id.* at 2–3.) Defendant did not have an arrest warrant. (*Id.* at 3.) After his arraignment, Plaintiff "was held on $75,000 bail," and was not produced in court again on the case. (*Id.*) However, in a letter, Plaintiff also states that after his arraignment, he was given dates to appear before the Court at least once a month, which conflicted with dates he was given to appear before his Probation Judge on an unrelated matter. (Pl.'s IPTC Letter 2.)[4]

On December 15, 2010, Plaintiff "was violated on his probation and sentenced to 1 to 3 years in prison, based on his open Attempted Robbery [in the Second Degree] case." (Sec. Am. Compl. 3.) The grand jury decided not to indict Plaintiff, and on August 19, 2011, the attempted

---

[1] The following factual summary is drawn from the allegations of the Second Amended Complaint, (Doc. 23), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). I also assume as true the facts included in Plaintiff's submissions opposing the motion for judgment on the pleadings, as well as his other factual submissions to this Court. *See Henning v. N.Y.C. Dep't of Corr.*, 14-CV-9798 (JPO), 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("Although this allegation appears in his opposition papers, the Court—consistent with its duty to liberally construe *pro se* pleadings—will credit Plaintiff's assertion in evaluating the sufficiency of his complaint."). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] I note that in his initial complaint Plaintiff alleged that he was in his home asleep at 5:30 a.m. on October 7, 2010 when "officers from the warrant squad came to his home with [a] bench warrant for [a] missed court date." (Doc. 1, at 3.)

[3] "Sec. Am. Compl." refers to the Second Amended Complaint, filed on August 14, 2015. (Doc. 23.)

[4] "Pl.'s IPTC Letter" refers to the letter Plaintiff filed on January 14, 2016, in advance of the initial pretrial conference. (Doc. 33.)

robbery charge was dismissed and sealed. (*Id.*) However, Plaintiff did not become aware of the dismissal until he was released from prison on May 25, 2012, despite his attempts during the period that he was incarcerated to contact his attorney to ask if the case was still pending and why he was not being produced for a hearing. (*Id.*; Pl.'s IPTC Letter 2.) Plaintiff further claims that he was unable to obtain a copy of his "criminal repository" until July 7, 2014.[5] (Pl.'s IPTC Letter 2.) The case was terminated in Plaintiff's favor.[6] (Sec. Am. Compl. 3.) Plaintiff served at least fifteen months and twenty-two days, or at most twenty months, in prison. (*Id.* (stating he was "wrongfully imprisoned for 12 months also violated on probation served additional 8 months in Max A prison"); Pl.'s IPTC Letter 1 (stating he "served 15 months and 22 days in Prison").)

As a result of the alleged events giving rise to the Second Amended Complaint, Plaintiff appears to assert claims under 42 U.S.C. § 1983 for malicious prosecution under the Eighth Amendment, and violations of his due process and equal protection rights under the Fifth[7] and Fourteenth Amendments.[8] (Sec. Am. Compl. 5; *see also* Pl.'s IPTC Letter 1 (noting he is bringing this action for malicious prosecution as well as his due process rights, right to be free from unreasonable seizure, right to be free from malicious prosecution, and right to equal protection of the laws).)

---

[5] I view Plaintiff's use of the phrase "criminal repository" to be a reference to his criminal arrest record.

[6] According to Plaintiff, this was the third time since 2008 that the 34th Precinct initiated a malicious prosecution against him that was terminated in his favor. (Pl.'s IPTC Letter 2.)

[7] Plaintiff erroneously references the Fifth Amendment.

[8] Plaintiff also references Defendant's "fraud, deception, and misrepresentation" in his IPTC Letter, but I interpret this language as intended to support Plaintiff's argument for equitable tolling, rather than alleging a separate cause of action. (Pl.'s IPTC Letter 2.) Additionally, although Defendant construed the Second Amended Complaint as alleging false arrest, Plaintiff did not indicate that he was bringing such a claim in his listing of causes of action in his IPTC letter. (*See id.* at 1.)

3

## II. Procedural History

On July 16, 2014, Plaintiff filed the original complaint in this case against the State of New York and a John Doe police officer. (Doc. 1.) On September 26, 2014, Chief Judge Loretta A. Preska, to whom this case was originally assigned, granted Plaintiff's request to proceed in forma pauperis. (Doc. 8.) On November 13, 2014, Chief Judge Preska granted Plaintiff leave to amend within sixty days to remove the State of New York as a defendant and allege facts supporting his false arrest and malicious prosecution claims. (Doc. 9.) Chief Judge Preska informed Plaintiff that while he could name John Doe defendants, that "does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any 'John Doe' defendants and amending his complaint to include the identity of any 'John Doe' defendants before the statute of limitations period expires." (*Id.* at 7.)

On December 22, 2014, Plaintiff requested an extension to file the amended complaint because "it would not be possible for [him] to retrieve the necessary documents in such amount of time," and also requested a subpoena to help retrieve those documents. (Doc. 10.) Chief Judge Preska granted Plaintiff's request on January 6, 2015 in an order allowing Plaintiff to file the amended complaint thirty days from the date of the order, and denying Plaintiff's request for a document subpoena. (Doc. 11.) In denying the request for a subpoena, Chief Judge Preska noted that "the order to amend directs Plaintiff to include a short and plain statement of his claim but does not require Plaintiff to submit evidence or prove his allegations at this stage." (*Id.* at 1.) "The Court directed Plaintiff to clarify, for example, any facts demonstrating that the police officer lacked probable cause to arrest him and to clarify the basis for revoking his probation – whether it was because of his arrest on the bench warrant, the robbery charges, or some other

4

basis." (*Id.*) Plaintiff, who apparently did not receive Chief Judge Preska's January 6, 2015 order in time, made another request for an extension of time on January 12, 2015. (Doc. 12.) In another letter that was filed on the docket on January 15, 2015, Plaintiff provided his change of address and again referenced the request for an extension, this time requesting sixty to ninety days. (Doc. 13.) He also noted that he "had limited access to the law library and now will have to wait till [he was] done with the orientation status in [his] new facility to attend" and further noted that his mother was "going to personally try to get these [desired] documents." (*Id.*) Plaintiff stated that he was "not wasting the court[']s nor [his] time with false accusations and would like a chance to prove [his] case correctly." (*Id.*)

On January 15, 2015, the Court also received Plaintiff's request for a copy of Chief Judge Preska's January 6, 2015 order, and on January 16, 2015, the Court mailed another copy of that order to Plaintiff's new address. (*See* Doc. 14, at 1 n.1.) Chief Judge Preska further granted Plaintiff's request for an extension of time, and directed Plaintiff to file an amended complaint by February 16, 2015. (*Id.*) Chief Judge Preska again noted:

> [T]he amended complaint must include a short and plain statement of his claim, but Plaintiff need not submit evidence or prove his allegations at this stage. . . . To comply with Rule 8(a) . . . Plaintiff's amended complaint need only include factual allegations about what occurred, such as who was personally involved in the violation of his rights, what facts show that his rights were violated, when and where such violations occurred, and why he is entitled to relief.

(*Id.* at 1–2.) Chief Judge Preska also stated again that the "naming of John Doe Defendants does not toll the statute of limitations," and told Plaintiff that if the amended complaint supplied sufficient identifying information, the Court could assist the Plaintiff in identifying these defendants. (*Id.* at 2.)

On February 20, 2015, Plaintiff filed the Amended Complaint, (Doc. 15), and on April 1, 2015, the case was reassigned to me. On that same day, I issued an order directing the New

York City Law Department to help ascertain the identity of the John Doe defendant based on the allegations in the Amended Complaint, and directing that Plaintiff, within thirty days of receiving this information, file a Second Amended Complaint. (Doc. 17.) On June 1, 2015, the New York City Law Department identified Sergeant Michael Seiling as the John Doe defendant, (Doc. 19), and on July 2, 2015, I received a request from Plaintiff to extend the time for him to file the Second Amended Complaint by "at least 30 days," (Doc. 20). Plaintiff explained that since receiving the full name of Defendant, he had been

> requesting access to the Law library here at the facility to no avail. . . . I also have let staff here know that I have a deadline to meet. I have been told that I need to show documentation of an actual date/deadline to gain special access (everyday). After I show them proof of that then it will take them about a week to process my request.

(*Id.*) I granted Plaintiff's application on July 7, 2015, and gave him until August 7, 2015 to file the Second Amended Complaint. (Doc. 22.) On August 14, 2015, I received Plaintiff's Second Amended Complaint, (Doc. 23), and, subsequent to my issuing an order of service on September 10, 2015, (Doc. 24), the U.S. Marshals Service executed service on Defendant on or about September 22, 2015, (Doc. 25). On November 23, 2015, Defendant filed his Answer. (Doc. 29.)

On December 7, 2015, I issued an order setting an initial pretrial conference for January 21, 2016, (Doc. 30), and on January 14, 2016, Defendant and Plaintiff both filed letters responding to my order, (Docs. 32, 33). I held the conference on that date, and subsequently stayed discovery pending resolution of Defendant's anticipated motion for judgment on the pleadings. (Doc. 34.) In accordance with my order, Defendant filed his motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on March 3, 2016. (Docs. 35–37.) Plaintiff requested an extension of time to file his opposition, the reason being that he had "recently made two F.O.I.L[.] requests for documents that [would] support [his] opposition, as

6

well as a written deposition and emails that were sent to [his] lawyer at the time of the incident in question." (Doc. 38.) Notwithstanding Chief Judge Preska's prior orders and the Pro Se Motion Instructions mailed to him, Plaintiff questioned whether these documents were required as attachments to his opposition. (*Id.*) On April 6, 2016, I granted Plaintiff's request for an extension and directed him to the Pro Se Motion Instructions for a description of what to include in his opposition. (Doc. 39.) Plaintiff filed his opposition on April 21, 2016, and within his opposition made a cross-motion for an extension of time to serve process. (Doc. 40.) After Defendant failed to file a reply, I issued another order indicating that if Defendant failed to file a reply on or before July 1, 2016, I would consider the motion fully briefed. (Doc. 41.) On July 1, Defendant filed a letter requesting that I deem the motion fully briefed, (Doc. 42), which I granted, (Doc. 43).

### III. Legal Standards

#### A. *Motion for Judgment on the Pleadings*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" under Federal Rule of Civil Procedure 12(c).[9] Fed. R. Civ. P. 12(c). The standard applicable to motions under Rule 12(c) is the same as the standard applied to motions to dismiss pursuant to Rule 12(b)(6). *Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have

---

[9] Having filed an answer, Defendants were not permitted to file a Rule 12(b) motion. Fed. R. Civ. P. 12(b) ("A motion [under Rule 12(b)] must be made before pleading if a responsive pleading is allowed.").

7

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion under Rule 12(b)(6) or Rule 12(c), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *accord Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### B. *Pro se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual

allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

IV. **Discussion**

Although the allegations in the Second Amended Complaint do not clearly state separate causes of action, Plaintiff appears to be making a number of general claims under 42 U.S.C. § 1983. Defendant—interpreting the allegations in the Second Amended Complaint—moves for judgment on the pleadings, arguing that Plaintiff failed to file this action within the statute of limitations for claims of false arrest and malicious prosecution. (*See generally* Def.'s Mem.)[10] In his memorandum in support of his motion for judgment on the pleadings, Defendant contends that (1) Plaintiff's claims are time-barred; and (2) Plaintiff's malicious prosecution claim does not relate back to the original Complaint. (*See generally id.*)

A. *Timeliness of Plaintiff's Claims*

Because § 1983 does not provide a specific statute of limitations, courts apply the statute of limitations for personal injury actions under state law. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Owens v. Okure*, 488 U.S. 235, 249–51 (1989); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)). In New York, the applicable statute of limitations for § 1983 claims is three years. *See id.*; *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). "'Federal law determines when a [§] 1983 cause of action accrues, and . . . that

---

[10] "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss the Second Amended Complaint, filed on March 3, 2016. (Doc. 37.) In his memorandum, Defendant also requests that any and all other federal claims possibly conceived by Plaintiff related to his arrest and prosecution be similarly barred. (Def.'s Mem. 5 n.2.) To the extent Plaintiff intended to raise other claims related to his prosecution that are not obvious from his pleadings, I decline Defendant's request to make any rulings with regard to any such claims.

9

accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Hogan*, 738 F.3d at 518 (quoting *Pearl*, 296 F.3d at 80). "Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." *Singleton v. City of N.Y.*, 632 F.2d 185, 192–93 (2d Cir. 1980).

To the extent Plaintiff alleges false arrest, that claim is clearly time-barred.[11] A "cause of action for false arrest 'accrues at the time of detention.'" *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)). Plaintiff was arrested and subsequently detained on or about October 7, 2010, (Sec. Am. Compl. 2), meaning that the statute of limitations for false arrest would have expired on or about October 7, 2013. Plaintiff unequivocally alleges that he was arrested and detained on October 7, 2010, and that Defendant did not have an arrest warrant. (*Id.* at 2–3.) Therefore, a cause of action for false arrest would have accrued prior to the filing of Plaintiff's initial Complaint on July 16, 2014, and Plaintiff's cause of action for false arrest is time-barred and must be dismissed.

To state a malicious prosecution claim under § 1983, a plaintiff must allege the elements of a state-law malicious prosecution claim. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). The elements of malicious prosecution are: (1) the initiation of a prosecution against a plaintiff; (2) without probable cause; (3) the proceedings were begun with malice; and (4) the matter terminated in plaintiff's favor. *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003); *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). In actions brought under § 1983, a plaintiff must also have suffered a sufficient post-arraignment deprivation of liberty implicating

---

[11] I note at the outset that while Plaintiff included facts surrounding his arrest in his initial Complaint, (Doc. 1), he did not include these facts in the Second Amended Complaint.

his Fourth Amendment rights. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000). A cause of action for malicious prosecution accrues "when the underlying criminal action is conclusively terminated." *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).

Defendant urges the Court to consider August 19, 2011, the date that the criminal charges against Plaintiff were dismissed, as the date of accrual. (Def.'s Mem. 7.) Plaintiff, on the other hand, appears to request that I apply equitable tolling to find the date of accrual as July 5, 2014, the date Plaintiff was able to obtain a copy of his criminal record, or May 25, 2012, the date he was released from prison and received notice of the termination of the criminal case. (Pl.'s IPTC Letter 2.)

A court may grant equitable relief, such as the tolling of the statute of limitations, "in the court's discretion only upon consideration of all the facts and circumstances." *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003). The Second Circuit has applied equitable tolling only in "rare and exceptional circumstances," where such circumstances "prevented a party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks omitted). "The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence." *Baldayaque*, 338 F.3d at 153 (noting that the appropriate question is whether the party seeking equitable tolling acted "as diligently as reasonably could have been expected under the circumstances").

Although, based on the record before me, there are insufficient reasons to toll the statute of limitations until July 5, 2014, I do find that there are allegations supporting equitable tolling until the date Plaintiff gained an awareness of the termination of the prosecution in his favor. *Cf.*

11

*Singleton*, 632 F.2d at 192 ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action."). In this vein, the Second Circuit has found that for extraordinary circumstances to prevent timely filing of a complaint, the information a plaintiff claimed to have sought "must have been necessary for that complaint to have been legally sufficient." *Walker*, 430 F.3d at 564. According to Plaintiff, he had no way of ascertaining one of the key elements of malicious prosecution—the termination of the prosecution in his favor—until he was released from prison on May 25, 2012. (Pl.'s IPTC Letter 2.) This was not based on any failure to act on his part; to the contrary, Plaintiff made repeated "inquiries on the progress of [his] case or if [his] case was still pending as well as why he was not being produced." (*Id.*) Courts have declined to dismiss claims on statute of limitations grounds in similar circumstances as those that exist here. *See, e.g.*, *Vasquez v. Greiner*, 68 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (granting equitable tolling at motion to dismiss stage where pro se incarcerated plaintiff "was never informed by anyone," including his attorney, that his conviction had been affirmed by the state court of last resort, triggering the limitations period for filing a petition for a writ of habeas corpus); *Roa v. Portuondo*, No. 02 Civ. 6116(MBM), 2004 WL 1124647, at *4 (S.D.N.Y. May 19, 2004) (granting equitable tolling at motion to dismiss stage where pro se incarcerated plaintiff's attorney "never told [plaintiff] about" events that triggered statute of limitations and plaintiff "may not have had any meaningful access to published court rulings"); *see also Baldayaque*, 338 F.3d at 152 (holding that "extraordinary circumstances" existed in part because plaintiff's attorney "failed to keep his client reasonably informed about the status of the case").

As a result, the statute of limitations for Plaintiff's malicious prosecution claim did not expire until May 25, 2015, after the filing of both his Complaint on July 6, 2014 and his

12

Amended Complaint on February 20, 2015, and even after the date on which Defendant acknowledges the Office of the Corporation Counsel had notice, on April 1, 2015.[12] (Def.'s Mem. 10.) However, the statute of limitations period did expire before Plaintiff filed his Second Amended Complaint naming Defendant for the first time on August 14, 2015, and it is for this reason that I examine the standards governing relation back.

### B. *Relation Back of Plaintiff's Claims*

As Chief Judge Preska noted in her previous orders in this case, John Doe pleadings generally cannot be used to evade statutes of limitations, as the replacement of "John Doe" with a named party is considered a change in the party being sued, rather than a mistake in the original identity of that party. *See Hogan*, 738 F.3d at 517. As such, a plaintiff may replace a "John Doe" with a named party in a later-filed amended complaint only if the amendment satisfies Federal Rule of Civil Procedure 15(c), which governs when an amended complaint can "relate back" to the date of the earlier or original complaint. *See* Fed. R. Civ. P. 15(c).

In the case of a party seeking to amend a pleading to convert a "John Doe" defendant into a named party, the Second Circuit has generally analyzed relation back under two specific provisions: Rule 15(c)(1)(C), which is considered the "federal standard for relation back," and Rule 15(c)(1)(A), which permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." *See Hogan*, 738 F.3d at 517–18 (applying Rule 15(c) to § 1983 claims brought against John Doe defendants).

---

[12] My ruling on Plaintiff's entitlement to equitable tolling is based upon the facts alleged by Plaintiff and accepted as true. Therefore, my Opinion and Order is not intended to and does not preclude Defendant from revisiting this issue at the summary judgment stage of the case, after further development of the facts. *See Moses v. Westchester Cnty. Dep't of Corr.,* 10 Civ. 9468 (ER), 2017 WL 4386362, at *7–9 (S.D.N.Y. Sept. 29, 2017) (declining to apply equitable tolling at summary judgment stage, after parties engaged in development of facts relevant to equitable tolling inquiry, even though court applied equitable tolling at motion to dismiss stage).

13

### 1. Rule 15(c)(1)(C)

Rule 15(c)(1)(C) provides that an amendment relates back when (1) the amendment asserts a claim that "arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading"; (2) within the period provided by Federal Rule of Civil Procedure 4(m), the newly named party received notice of the action such that it would not be prejudiced in defending on the merits; and (3) also within the period provided by Rule 4(m), the newly named party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); *see also Hogan*, 738 F.3d at 517 (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995)). The Second Circuit has found that the rule "preclude[s] relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517 (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999); *Barrow*, 66 F.3d at 470); *see also Arminio v. Holder*, No. 15 Civ. 5812 (NSR), 2016 WL 4154893, at *4 (S.D.N.Y. Aug. 1, 2016). Thus, the "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" *Hogan*, 738 F.3d at 518; *see also Jennis v. Rood*, 310 F. App'x 439, 440 (2d Cir. 2009) (summary order) ("[Plaintiff's] failure to name the individual defendants was due to a lack of knowledge, not mistake."). Plaintiff has not met the third requirement of Rule 15(c)(1)(C) and, therefore, under Rule 15(c)(1)(C), Plaintiff is time-barred from bringing his malicious prosecution claim against Defendant.

### 2. Rule 15(c)(1)(A)

Rule 15(c)(1)(A) provides for a more lenient standard for relation back in the John Doe context. *See Hogan*, 738 F.3d at 518 ("[U]nder Rule 15(c)(1)(A), we must determine if New York state law provides a 'more forgiving principle of relation back' in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C). We hold that it does."). The CPLR specifically outlines the procedure for claims brought against John Doe defendants. Under § 1024 of the CPLR:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. New York courts interpret this provision to allow for retroactive substitutions of John Doe defendants. *See, e.g.*, *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 105 (2d Dep't 2009). However, § 1024 mandates that a party fulfill two requirements: first, "the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and second, "the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Hogan*, 738 F.3d at 519 (internal quotation marks omitted); *see also Jordan v. City of N.Y.*, 15-cv-6364, 2016 WL 1383534, at *3 (S.D.N.Y. Apr. 7, 2016) ("Due diligence 'requires that a plaintiff show that he or she made timely efforts to identify the correct party before the statute of limitations expired.'" (quoting *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014))).

Here, Plaintiff, based upon his assertions, satisfies the due diligence requirement. In fact, any delay on his part was a direct result of his misunderstanding of the legal system or his lack of access to the proper facilities while incarcerated, and not due to any flippancy as to the time

15

constraints. For a period of almost two years while he was incarcerated, Plaintiff "through telephone, and through a Thatiana Cruz (spouse of Plaintiff on said dates) via email/phone made <u>at least</u> one inquiry a month: one request being discovery material which contained defendant's identity to Plaintiff's lawyer." (Pl.'s Dec. ¶ 3.)[13] His "inquiries went unanswered." (*Id.* ¶ 4.) The New York State Division of Criminal Justice Services ultimately gave Plaintiff some identifying information—including, presumably, the badge number of Defendant that Plaintiff included in his original Complaint—in June 2014, and Plaintiff initiated this proceeding shortly thereafter. (*Id.* ¶ 5.) Additionally, either contemporaneously with these events or in the months following, Plaintiff made at least one request under New York's Freedom of Information Law ("FOIL") to the Police Department Legal Bureau for Defendant's name, "numerous requests" to the criminal court that had overseen Plaintiff's criminal case, and "numerous" requests to the law library at the facility where he was incarcerated so that he could draft the Amended Complaint. (*Id.* ¶¶ 11, 12; *see also* Pl.'s Opp. 23 (Jan. 21, 2015 response to Plaintiff's FOIL request); *id.* at 24 (February 2, 2015 letter to law library indicating "numerous" attempts to reach out as well as conversations with officers); *id.* at 29.)[14] *See also Jordan*, 2016 WL 1383534, at *3 (noting that the John Doe complaint "lists the date and location of the arrest that forms the basis of the action, so it seems likely that an officer involved in plaintiff's arrest would know that he or she was an intended defendant"); *Ceara*, 68 F. Supp. 3d at 411–12. Finally, this Court received Plaintiff's Amended Complaint, the contents of which allowed me to issue an order under *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), on February 20, 2015, prior to the running of the statute of

---

[13] "Pl.'s Dec." refers to the Declaration of Leonardo Medina submitted in support of his opposition. (Doc. 40, Ex. A.)

[14] "Pl.'s Opp." refers to the entirety of Plaintiff's submission in support of his opposition to Defendant's motion for judgment on the pleadings, as well as his cross-motion for an extension of time for service of process. (Doc. 40.) Because the individual documents and exhibits are not uniformly numbered, I reference the ECF page numbers in my citations.

limitations. Plaintiff eventually received Defendant's full name on June 5, 2015, after the statute of limitations had already expired.

Similarly, Plaintiff satisfies the second requirement. Prior to the expiration of the statute of limitations on May 25, 2015, Plaintiff filed his Amended Complaint, (Doc. 15), containing sufficient identifying information such that I was able to issue a *Valentin* order, (Doc. 17), and the New York City Law Department was able to identify Defendant, (Doc. 19). Among other details, in his Amended Complaint, Plaintiff provided Defendant's shield number, Plaintiff's criminal case number, the arrest number, the criminal justice tracking number, and the arresting agency, as well as information regarding the date, approximate time, and location of the events giving rise to his claims. (*See* Doc. 15.) In fact, Defendant acknowledges that the Office of the Corporation Counsel became aware of this action on or about April 1, 2015. (Def.'s Mem. 10.) As a result, I find that Plaintiff's malicious prosecution claim is not time-barred.[15]

### C. *Extension Under CPLR § 306-b*

In his opposition, Plaintiff also cross-moves for an extension of time to serve process pursuant to § 306-b of the CPLR. Section 306-b provides that, "once a John Doe complaint is filed, a plaintiff must serve it on the correct defendant 'within one hundred twenty days after the commencement of the action.'" *Ceara*, 68 F. Supp. 3d at 412 n.2 (quoting N.Y. C.P.L.R. § 306-b). If the plaintiff does not serve the defendant according to this provision, "the court, upon motion, shall dismiss the action without prejudice as to that defendant, or upon good cause shown or in the interest of justice, extend the time for service." N.Y. C.P.L.R. § 306-b. Defendant did not bring a motion to dismiss under this provision, nor did Defendant reply to

---

[15] Because I otherwise hold that Plaintiff's malicious prosecution claims are not time-barred, I do not make a finding as to whether CPLR § 203 also applies.

17

Plaintiff's cross-motion. *Cf. Daniels v. King Chicken & Stuff, Inc.*, 827 N.Y.S.2d 186, 187 (2d Dep't 2006) ("CPLR 306-b provides that a court may only dismiss a complaint for failure to effect timely service of process 'upon motion,' not on its own initiative.") (quoting N.Y. C.P.L.R. § 306-b). In fact, any attempt by Defendant to do so would be somewhat befuddling, as it is "[a] New York state court (not a federal court)" that may apply § 306-b to evaluate Plaintiff's service and determine whether to extend the 120-day window on a showing of either "good cause" or "in the interest of justice." *Sherrard v. City of N.Y.*, No. 15-CV-7318 (CM), 2016 WL 1574129, at *6 (S.D.N.Y. Apr. 15, 2016); *see also Vasconcellos v. City of N.Y.*, No. 12 Civ. 8445(CM), 2014 WL 4961441, at *10 (S.D.N.Y. Oct. 2, 2014) (explaining that § 306-b is "not a true tolling provision" but is rather "a state-law analog of Fed. R. Civ. P. 4(m)"). As a result, I deny Plaintiff's motion for an extension under § 306-b.

**V.     Conclusion**

For the foregoing reasons, Defendant's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART, and Plaintiff's cross-motion for an extension of time for service of process under § 306-b of the CPLR is DENIED.

Defendant is instructed to prepare and to obtain Plaintiff's consent to a proposed Case Management Plan and Scheduling Order related to discovery concerning the issue of equitable tolling and the claim that has survived. Should the parties wish to raise the issue of equitable tolling prior to a resolution on the merits of Plaintiff's remaining claim, they may wish to conduct discovery with respect to that issue prior to merits discovery. The parties shall submit their proposed Case Management Plan and Scheduling Order on or before April 27, 2018. A template for the order is available at http://nysd.uscourts.gov/judge/Broderick.

The Clerk's Office is respectfully directed to mail a copy of this Opinion and Order to the

18

pro se Plaintiff and terminate the open motions at Documents 35 and 40.

SO ORDERED.

Dated: March 29, 2018
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge